IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**KAREN FIELDS**,  )
    Plaintiff,  )
)
v.  )
)    No. 08 C 964
**ERIC K. SHINSEKI**, Secretary of  )
Veterans,  )
)
    Defendant.  )
)
)

## MEMORANDUM OPINION AND ORDER

The present lawsuit began as a state court action in which plaintiff, who was employed by the Department of Veterans Affairs ("VA") as a healthcare technician in the Spinal Cord Injury ("SCI") unit of the Hines VA medical center, asserted claims of assault, battery, and intentional infliction of emotional distress against Robert O'Hara, a medical doctor and Acting Associate Chief of CSI. The United States removed the state action to federal court, was substituted as the sole defendant, then successfully moved to dismiss the case based on plaintiff's failure to exhaust administrative remedies as required by the Federal Tort Claims Act. Plaintiff then filed an amended complaint in this court, in which she asserted race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against the Secretary of the U.S. Department of Veterans Affairs

("defendant"),[1] and a *Bivens* action against O'Hara. The *Bivens* action was dismissed, leaving only the Title VII claim against defendant. For the reasons expressed below, I now grant summary judgment of that claim in defendant's favor.

I.

The central event underlying plaintiff's claim is a workplace dispute between plaintiff and O'Hara on January 22, 2007. According to plaintiff, O'Hara entered the office plaintiff shared with CSI's receptionist and complained that the door to that office was closed.[2] Certain particulars of the argument are disputed (for example, each claims that the other escalated the altercation), but these issues are not material to the resolution of defendant's summary judgment motion. The material facts, which are either undisputed, or are construed here as generously to plaintiff as the record allows, are that O'Hara entered plaintiff's office and told plaintiff "in an angry manner" that the door to the office must

---

[1] At the time, then-Secretary James B. Peake was named in the complaint, but Shinseki was substituted for Peake by operation of law.

[2] In her opposition, plaintiff states that O'Hara also complained about the office lights being off, but the factual record does not support that assertion. Although plaintiff did allege, in her administrative claim, that O'Hara complained about the lights being off, she states in her L.R. 56.1 responses that "Dr. O'Hara did not mention anything about the lights. I heard about the lights afterward." The meaning of this statement is unclear, but in any event, plaintiff's conflicting accounts of what O'Hara may or may not have said about the lights is plainly insufficient to raise any inference at all in plaintiff's favor.

remain open.  Plaintiff responded by explaining that she kept the door closed to maintain the privacy of the patient information displayed on her door-facing computer screen.  O'Hara called that explanation "bull"[3] and told plaintiff that she could protect patient privacy simply by minimizing her screen when others were present.  He then leaned over plaintiff to show her how to minimize her screen.[4]

Plaintiff told O'Hara that she knew how to minimize her screen and tried to leave the office, but she was prevented from doing so by O'Hara, who moved in front of her to block her exit and told her to "shut up and sit down."  Plaintiff states that as she attempted to leave the office, O'Hara pushed his chest against hers to prevent her from leaving, and told her, "I know what I am going to do, I am sending you to the back, that's where you belong."  Plaintiff was ultimately able to get around O'Hara and leave the office.

---

[3]Plaintiff now claims that O'Hara called her explanation "bullshit," although in her administrative complaint, she said he told her it "bull."  Ultimately, this discrepancy is immaterial to plaintiff's claim, which does not hinge on O'Hara's alleged use of profanity during the altercation.

[4]Plaintiff acknowledges that she once heard O'Hara tell another, non-African American employee to keep his office door open.  She asserts that she was treated differently from this employee, however, because that employee was not subsequently relocated to another office.  These facts are likely relevant to plaintiff's *prima facie* discrimination claim, but because other issues are dispositive, I need not address them.

Shortly after this incident, Dr. O'Hara prepared a memorandum advising plaintiff that she would be moved to a different office. Plaintiff was subsequently relocated to another office in "the back," where her computer screen did not face the door, but where plaintiff claims her access to patients was impaired.

In addition to the foregoing episode, plaintiff claims that she heard O'Hara speak to two, non-African-American employees[5] in a "bubbly" tone, but "[w]hen it came time for Plaintiff to do something for him, it's, 'would you tell that girl this patient needs this here done?'"

At her deposition, plaintiff stated that she is not aware of anyone other than O'Hara discriminating against her based on her race.

## II.

A successful discrimination claim under Title VII requires an employee to prove, among other things, that she was discriminated against "with respect to [her] compensation, terms, conditions, or privileges of employment" based on her race, sex, or other prohibited ground. 42 U.S.C. § 2000e-2(a)(1). Title VII may be violated by *explicit* alterations in the terms or conditions of employment, as is the case when an employer takes a tangible,

---

[5] Defendant is correct that the record does not identify the race of the two employees. Nevertheless, that they were non-African-American is a reasonable inference from plaintiff's testimony, so I assume these facts for the purpose of resolving plaintiff's motion.

4

materially adverse employment action against an employee, or it may violated by *constructive* alterations in the terms or conditions of employment, as is the case when an employee is subjected to severe or pervasive harassment resulting in a hostile work environment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). Plaintiff appears to assert both types of claims (which, for ease of reference, I refer to as her "discrimination" and "harassment" claims, respectively), though her argument weaves in and out of these distinct theories of Title VII liability, and further confounds the analysis by conflating the two theories of liability with the two methods of proof (the "direct" method and the "indirect" method) available for discrimination claims. At bottom, however, to survive summary judgment, plaintiff must identify evidence sufficient to enable a jury to conclude, at a minimum, either that her altercation with O'Hara and office reassignment amounted to a discriminatory adverse employment action, or that O'Hara's treatment of her resulted in a hostile work environment.[6]

"For purposes of Title VII, an adverse employment action is a

---

[6]Admittedly, this summary glosses over the various steps of the applicable analyses, but there is no need to parse those steps in detail here. Plaintiff acknowledges that an adverse employment action is an element of her *prima facie* discrimination claim (though oddly, she recites the elements of that claim in a section devoted to her hostile environment theory of liability), and she further recognizes that her hostile environment claim requires proof of severe or pervasive harassment.

significant change in the claimant's employment status such as hiring, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." *Rhodes v. Illinois Dept. Of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004). Even assuming O'Hara behaved as offensively and even brutishly as plaintiff contends during their January 22 argument (plaintiff characterizes the incident as an "assault," which is indeed the claim she pressed in state court), his alleged conduct simply had no tangible bearing on plaintiff's employment status. And while plaintiff's office reassignment is arguably related to the conditions of her employment, it falls short of the type of adverse action necessary for Title VII liability. Plaintiff's evidence (which, on this issue, is limited to her affidavit) arguably shows that the office reassignment was an inconvenience to her. But "[n]ot everything that makes an employee unhappy is an actionable adverse action." *Murray v. Chicago Transit Authority*, 252 F.3d 880, 888 (7th Cir. 2001). The only case plaintiff cites in her argument that the office change amounted to an adverse employment action, *Knox v. State of Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996), is inapposite.

In *Knox*, the Seventh Circuit examined the propriety of jury instructions that enabled the jury in that case to consider a broad range of adverse actions in evaluating whether the plaintiff had

proven a retaliation claim under Title VII. In declining to overturn the jury's verdict for the plaintiff, the court noted, "[t]here is nothing in the law of retaliation that restricts the type of retaliatory act that might be visited upon an employee who seeks to invoke her rights by filing a complaint," then went on to observe that a wide range of adverse actions, including, hypothetically, "moving the person from a spacious, brightly lit office to a dingy closet," could have the retaliatory effect of putting a complainant in a "more unfriendly working environment." *Id*. But these observations, in their factual and procedural context, provide no support for plaintiff's argument that her office reassignment amounted to actionable discrimination in the terms or conditions of her employment. Accordingly, defendant is entitled to summary judgment on this claim. *See Rhodes*, 359 F.3d at 504 (summary judgment appropriate where plaintiff submits no evidence of materially adverse employment action within the meaning of Title VII).[7]

---

[7]Although plaintiff's amended complaint facially asserts a Title VII retaliation claim, she appears to have abandoned any such claim by failing to respond to defendant's argument that it is entitled to summary judgment because 1) the claim is outside the scope of plaintiff's administrative claim, 2) the amended complaint fails to specify which of plaintiff's actions constituted protected activity or which of defendant's actions were based on retaliation, and 3) there is no evidence to support a retaliation claim. See *Palmer v. Marion County*, 327 F.3d 588, 597-99 (7th Cir. 2003) (claims not addressed in summary judgment opposition deemed abandoned).

Plaintiff's hostile environment claim also fails as a matter of law. As noted above, to prevail on this claim, plaintiff must ultimately show that the alleged harassment was severe or pervasive. *Atanus v. Perry*, 520 F.3d 662, 676 (7th Cir. 2008). The only harassing conduct plaintiff asserts, however, is O'Hara's behavior on January 22 and the tone he used when speaking to plaintiff, which she perceived as less "bubbly" than the tone he used with two non-African American employees.[8] Under Seventh Circuit law, however, "being addressed in a loud, unprofessional tone during one meeting does not satisfy the requirement that the offensive conduct be severe and pervasive." *Atanus*, 520 F.3d at 676 (citing *Moser v. Indiana Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005) and *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533, 537 (7th Cir. 1993)). Moreover, isolated instances of misconduct, even where it includes unwelcome physical contact, is insufficient to withstand summary judgment. *See Saxton*, 10 F.3d at 534-535 (rejecting hostile environment claim despite "relatively isolated" instances of non-severe sexual misconduct, which included unwelcome touching). Accordingly, O'Hara's alleged conduct on January 22,

---

[8] Plaintiff also argues that "promises to transfer her away from O'Hara and to have him apologize were rescinded and she continued under his unit unable to escape daily contact with her attacker." These allegations, however, do not bear on the question of whether a hostile environment existed (i.e., whether there was severe or pervasive harassment), but on the separate issue of employer liability (i.e., whether the employer took corrective action).

8

standing alone, is not actionable under a hostile environment theory. Nor is Title VII a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), so plaintiff's allegation that O'Hara used a less "bubbly" tone with her than with other employees adds little support to her claim. In short, plaintiff falls far short of establishing the kind of severe or pervasive harassment needed to withstand summary judgment of her hostile environment claim.

III.

For the foregoing reasons, defendant's motion for summary judgment is granted.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge

Dated: October 16, 2009